ISAAC BIERMAN et al., Appellants, *v.* CITY MILLS COMPANY, Respondent.

1. SALE BY MANUFACTURER OF GOODS — IMPLIED WARRANTY. In the case of a sale where the seller is the manufacturer of the article sold, and the contract is executory and for the delivery of something of a particular kind, there is an implied warranty that the article shall be merchantable and free from any defect arising from the process of manufacture or the use of defective materials, and not discoverable by ordinary inspection and tests.

2. ASSUMED AGENCY TO SELL — ADOPTION — OBLIGATION IMPOSED UPON PRINCIPAL. The adoption, by a manufacturer, of another's assumed agency to sell his product for him, charges him with knowledge of the use to which the product is to be put, and imposes the duty of delivering goods which shall be merchantable and reasonably fit for that use, and a consequent liability for a failure attributable to defects in the process of manufacture or in the materials employed.

3. Acceptance of Goods — Latent Defects.   The obligation arising from the implied warranty imposed upon the seller of goods manufactured by himself, survives their acceptance, if their defects were not discoverable upon inspection by ordinary tests.

4. Sale of Cloth by Maker — Defects Discoverable by Wear — Breach of Warranty.   When, in an action by a manufacturer of clothing to recover from a manufacturer of cloth damages for a breach of the latter's implied warranty that felt manufactured and sold by him was merchantable and fit for the purpose intended, the plaintiff's evidence tends to show that the felt contained defects in particular places, caused by an improper process of manufacture, and discoverable only by actual wear, the plaintiff is not concluded by an acceptance and retention of the felt and its manufacture into clothing, but the question of fact is presented whether the felt was merchantable.

*Bierman* v. *City Mills Co.*, 10 Misc. Rep. 140, reversed.

(Argued December 22, 1896; decided January 19, 1897.)

Appeal from a judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered November 7, 1894, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court at a Trial Term, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Sol. Kohn* for appellants.   To justify a nonsuit no construction of the evidence or inference drawn from the facts must have warranted a conclusion in plaintiffs' favor, and the verdict of a jury the other way must have been set aside as against the evidence. (*Weil* v. *D. D., E. B. & B. R. R. Co.*, 119 N. Y. 152; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 141; *Galvin* v. *Mayor, etc.*, 112 N. Y. 229; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 466.)   The sale to plaintiffs was accompanied by an express warranty. (*F. C. Co.* v. *Metzger*, 118 N. Y. 265; *Hawkins* v. *Pemberton*, 51 N. Y. 198; *Stone* v. *Denning*, 4 Metc. 151.)   In a sale of goods for a specified purpose, the law presumes an implied warranty that the goods sold were suitable for that purpose. (*Hoe* v. *Sanborn*, 21 N. Y. 561; *F. C. Co.* v. *Metzger*, 118 N. Y. 267;

*Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137.) In the case of a warranty, express or implied, the right to recover damages survives the acceptance of the things warranted. (*Muller* v. *Eno*, 14 N. Y. 597; *Day* v. *Pool*, 52 N. Y. 417; *Brigg* v. *Hilton*, 99 N. Y. 517; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137.) There is no difference in regard to remedies for breach of warranty between an executory sale and one *in presenti*. (*Day* v. *Pool*, 52 N. Y. 417; *Brigg* v. *Hilton*, 99 N. Y. 517.) In an action for breach of warranty, gains prevented, as well as losses sustained, may be recovered. (*White* v. *Miller*, 71 N. Y. 118; *Beeman* v. *Banta*, 118 N. Y. 538; *Swain* v. *Schieffelin*, 134 N. Y. 471.) An agent to sell has authority to warrant. (*Schuchardt* v. *Allen*, 1 Wall. 359; *Wait* v. *Borne*, 123 N. Y. 592; *Ahern* v. *Goodspeed*, 72 N. Y. 108; *Murray* v. *Smith*, 4 Daly, 277; *Andrews* v. *Kneeland*, 6 Cow. 354; *Milburn* v. *Belloni*, 34 Barb. 607; *Knox* v. *E. M. A. Co.*, 148 N. Y. 441; *Mayer* v. *Dean*, 115 N. Y. 560.) The court erred in excluding testimony as to the return of the coats, and as to other matters showing the defective qualities of the coats manufactured from the felt in question. (*Langdon* v. *Mayor, etc.*, 133 N. Y. 628; *Park* v. *M. A. & T. Co.*, 54 N. Y. 586; *Brigg* v. *Hilton*, 99 N. Y. 517; *Hine* v. *N. Y. E. R. R. Co.*, 149 N. Y. 162.)

*Edward Hinman* for respondent. The plaintiffs failed to show that Mr. Nichols had authority to make a contract of warranty that was collateral to the contract of sale, and was intended to survive an acceptance of the goods. (*Wait* v. *Borne*, 123 N. Y. 592; *Smith* v. *Tracy*, 36 N. Y. 79; *Argersinger* v. *Macnaughton*, 114 N. Y. 535; *Herring* v. *Skaggs*, 34 Am. Rep. 4.) The court was right in striking out any testimony that tended to show a warranty which the plaintiffs had not pleaded, and the statements which were pleaded did not constitute a separate contract of warranty collateral to the contract of sale. (*De Witt* v. *Berry*, 134 U. S. 306; *Reed* v. *Randall*, 29 N. Y. 358; *G. M. Co.* v. *Allen*, 53 N. Y. 515; *Studer* v. *Bleistein*, 115 N. Y. 316; *Carleton* v. *Lombard, Ayres &*

*Co.*, 149 N. Y. 137.) The plaintiffs selected the felt after trying a piece by manufacturing it into coats, and the defendant having delivered the material which the plaintiffs selected, they cannot hold the defendant responsible for the failure of the felt to show a strength which only cloth possesses. (*Hoe* v. *Sanborn*, 21 N. Y. 552; *Seitz* v. *B. R. Mfg. Co.*, 141 U. S. 510; *De Witt* v. *Berry*, 134 U. S. 306; *Gentilli* v. *Starace*, 133 N. Y. 140; *K. B. Co.* v. *Hamilton*, 110 U. S. 108.) Even if there had been a warranty, yet that which the plaintiffs call a defect, but which is really only one of the attributes of fulled goods, as distinguished from woven goods, was discoverable upon the most casual examination, and the plaintiffs were bound to show that they were not aware of it. (*Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137; *Studer* v. *Bleistein*, 115 N. Y. 316.) The plaintiffs cannot recover upon the theory of an implied warranty. (*Brown* v. *Foster*, 108 N. Y. 387; *Studer* v. *Bleistein*, 115 N. Y. 316; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137; *Dounce* v. *Dow*, 64 N. Y. 411; *Hargous* v. *Stone*, 5 N. Y. 73, 88; *Beck* v. *Sheldon*, 48 N. Y. 365, 373; *Neaffie* v. *Hart*, 4 Lans. 4; *Hart* v. *Wright*, 17 Wend. 267; *N. Y. S. M. M. P. Co.* v. *Remington*, 41 Hun, 218; *Magley* v. *Hoyt*, 26 N. E. Rep. 719.)

GRAY, J. The plaintiffs brought this action to recover damages of the defendant for a breach of warranty in the sale of felt cloths; and, as there was no written contract at the time, it is essential to know the facts and circumstances, under which the sales were made. The plaintiffs were engaged in business in the city of New York, as manufacturers of clothing. The defendant, a Massachusetts corporation, was engaged in the business of the manufacture and sale of felt goods. The plaintiffs alleged that the defendant, through its lawfully authorized agent, had represented to them that it manufactured a certain kind of cloths, fit for their use in the manufacture of coats and had requested them to purchase some. They further alleged that, relying on the representation, they had purchased such cloths and had manufactured them into cloth-

ing; that they subsequently discovered that the cloths were
"damaged, of an inferior quality, rotten, and unfit for any
purpose whatever," and that the defendant had concealed the
defects from the plaintiffs. They alleged that the defect was
a latent one and not discoverable by inspection, and was indi-
cated by wear; that many of the goods sold by the plaintiffs
had been returned to them and that they had on hand a number
of said coats, which they had been unable to dispose of. The
answer denied that the defendant had made any representa-
tions to the plaintiffs, as alleged, and denied the other allega-
tions of the complaint respecting the cloths sold, and set up as
a defense that the goods purchased by the plaintiffs were first-
class articles of their kind and suitable for the manufacture of
low-priced coats. Upon the trial of the issues, the plaintiffs
gave evidence that they had not purchased felt goods to be
manufactured into clothing, until they made the purchases
from the defendant; which occurred in the spring of 1890 at
the plaintiffs' place of business in New York. The purchase
was made through a Mr. Nichols; who showed them a sample
of the cloth and stated that it would make a splendid ulster;
that it wore like buckskin and that he had an ulster made
from the goods which he had worn for two years. Upon
these statements, and at the price of a dollar a yard, the plain-
tiffs told him that, "if he could warrant the goods," they could
use a very large quantity. Mr. Nichols said, "he would war-
rant it to wear" and, thereupon, plaintiffs told him to send in
a few pieces of the goods to be made up into a lot of ulster
samples; and orders were then and subsequently given for
cloths to be made up into ulsters for the fall trade, which were
filled by the defendant. Plaintiffs gave evidence that they
entirely relied upon Mr. Nichols' statements as to the quality
of the goods and had no knowledge regarding the wear of the
cloth, when manufactured into ulsters. Plaintiffs proceeded
with the manufacture of these goods through the summer
months, to the extent of 1,326 ulsters; of which they sold 1,027
throughout the country. Subsequently, ulsters were returned
to the plaintiffs in a damaged condition, with holes in them, or

"broken," or with "tender places" in them. The number of coats returned in a damaged condition was 200. The custom of the plaintiffs, when goods were received, was to examine them before sending them out to be manufactured into garments and then, when returned, the garments are again thoroughly examined. Witnesses, familiar with felts, testified as to how they were made and that, unless made with stocks or fibres sufficiently long to hold the short stocks or fibres together, upon exposure, the stocks will "creep," or draw away from each other. They testified, upon examining the ulsters in question, that the greater proportion of the stocks, from which they were made, had been short stocks; that after exposure, where the felt is not properly worked, the short stocks draw away from the long stocks and that the breaks in these ulsters were attributable to that cause. There was also testimony by a dealer in felt goods, who was familiar with the process of manufacturing and who had sold felt goods for overcoatings, that if made of proper materials, they would wear well and that the way of testing felt for durability and quality was only by actual wear ; unless "you try every square inch of the goods." At the conclusion of the plaintiffs' evidence, they had shown that the felt cloths, which they had purchased of the defendant, when made up into these overcoats and sold to customers, had proved, at least to a certain extent, to be so defective in their manufacture and were such "tender" goods, that holes, or breaks, appeared in the garments; that 200 of them had been returned and 299 were left unsold and were of no value. If their evidence is to be believed, these defects resulted from improper processes of manufacture and were only discoverable after exposure upon being worn. On behalf of the defendant, there was evidence to the effect that Nichols had never been in its employ and, upon his examination, he denied the representations attributed to him by the plaintiffs. He admitted that he had said that this felt cloth was a good thing for an overcoat and that he knew it was to be used for that purpose by the plaintiffs. He testified that he was not a manufacturer of felts, and that the

goods he sold to the plaintiffs were to be delivered by the defendant. There was also evidence for the defendant, given by its superintendent, that the felt delivered was a reasonably merchantable article for the price and that there was an ordinary and easy test for detecting the tenderness of the materials by pulling it in a certain way. A manufacturer of felts, examined for the defendant, testified that he attributed the " creeping " in the goods to a great extent to the rubber linings, which the plaintiffs had added to the coats in manufacturing them.

When all the evidence was in, on motion of the defendant, a verdict was directed in its favor and the request of the plaintiffs for leave to go to the jury upon the questions of fact; upon the question of whether there was an express or implied warranty and upon the question of the damages, was denied and an exception was taken to that denial. The General Term affirmed the judgment entered at the Trial Term and we are required upon this appeal, as the main question, to consider the correctness of the disposition made of the case by the trial court. Although the plaintiffs failed to sustain their allegation that the defendant had made certain representations to them respecting the goods, through an agent authorized to make the same, and, therefore, failed to establish an express warranty on the part of the defendant, their complaint contained, by a liberal construction, a sufficient cause of action for the recovery of damages for the breach of an implied warranty that the felt goods sold were fit for the plaintiffs' business in the manufacture of overcoats and that they were merchantable and free from any remarkable defect. The plaintiffs proved no custom to the effect that such sales were usually attended with a warranty and, therefore, in the absence of such proof and because of the failure to show any express authorization by the defendant to Nichols to sell, it cannot be said that any express warranty accompanied the sale. Nor did the ratification of Nichols' act, through the adoption of the sale by the delivery of the felts, bind the defendant to make good his warranty, or all of his representations. The rule is well

settled that ratification must be with full knowledge of the agent's acts. Even if Nichols had been employed to sell the goods, unless he was given express power to warrant, he could not give a warranty which would bind his principal; unless the sale was one which was usually accompanied with warranty. (*Smith* v. *Tracy*, 36 N. Y. 79.) In *Wait* v. *Borne*, (123 N. Y. 592), we held that, "the idea upon which is founded the right to warrant, on the part of an agent to sell a particular article, is that he has been clothed with power to make all the common and usual contracts necessary or appropriate to accomplish the sale of the article intrusted to him. And if in the sale of that kind or class of goods thus confided to him, it is usual in the market to give a warranty, the agent may give that warranty in order to effect a sale, and the law presumes that he has such authority. If the agent, with express authority to sell, has no actual authority to warrant, no authority can be implied where the property is of a description not usually sold with warranty."

The question here, however, is one of a sale, where the seller was the manufacturer of the article sold, and the contract being executory in its nature and for the delivery of something of a particular kind, there was the implied warranty, or promise, that the article to be delivered should be merchantable and free from any remarkable defect. MELLOR, J., in *Jones* v. *Just*, (L. R. [3 Q. B.], 197), after reviewing decisions illustrative of when the rule of *caveat emptor* does or does not apply in sales, stated as one of the results, as follows: "Where a manufacturer undertakes to supply goods, manufactured by himself, or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article." The same principle was laid down in *Howard* v. *Hoey* (23 Wend. 350) and in *Hoe* v. *Sanborn* (21 N. Y. 552) with respect to the obligation of a seller, under an executory contract to deliver an indeterminate thing of a particular kind, that it shall be free from any remarkable defect.

In *Kellogg Bridge Co.* v. *Hamilton* (110 U. S. 108), after a review of the leading cases bearing upon the point, it was held, that " when the seller is the maker or manufacturer of the thing sold, the fair presumption is that he understood the process of its manufacture, and was cognizant of any latent defects caused by such process and against which reasonable diligence might have guarded. * * * When, therefore, the buyer has no opportunity to inspect the article, or when, from the situation, inspection is impracticable or useless, it is unreasonable to suppose that he bought on his own judgment, or that he did not rely on the judgment of the seller as to latent defects of which the latter, if he used due care, must have been informed during the process of manufacture. If the buyer relied, and under the circumstances had reason to rely, on the judgment of the seller, who was the manufacturer or maker of the article, the law implies a warranty that it is reasonably fit for the use for which it was designed, the seller at the time being informed of the purpose to devote it to that use." Quite recently, in the case of *Carleton* v. *Lombard* (149 N. Y. 137), which was an action to recover damages for the breach of an executory contract for the sale of petroleum, produced by the defendant through certain manufacturing processes, we had occasion to consider the question of the liability of the seller for any latent defect arising in the process of the manufacture and the principle of the decisions in *Hoe* v. *Sanborn* (*supra*) and in *Kellogg Bridge Co.* v. *Hamilton* (*supra*) was affirmed. We held there that the maxim *caveat emptor* does not apply to the case of a manufacturer, who sells goods of his own manufacture, and that, in such a case, he is liable for any latent defects arising from the process of manufacture, or in the use of defective materials, upon the ground of an implied warranty. In *Hoe* v. *Sanborn* (*supra*) SELDEN, J., commented upon this exception to the general rule and held it to be a just one, using this language : " Wherever the vendor, therefore, has himself manufactured the article sold, or procured it to be done by others, if honesty and fair dealing are ever to be enforced by law, a warranty should be implied."

The principles of adjudged cases apply to the one before us. The defendant was the manufacturer of the article, which it sold to the plaintiffs, and the circumstances of the case were such as to imply a promise on its part that the article, which it manufactured and delivered to the plaintiffs, should be free from any latent defect. It was under the obligation to furnish an article, not of the higher quality necessarily, but one that was merchantable and free from any remarkable defect arising from the process of manufacture. Although there is no evidence that Nichols was expressly empowered to represent the defendant in the transaction, the adoption of his assumed agency to sell its product charged it with knowledge of the use to which that product was to be put and imposed the duty of delivering goods, which should be merchantable and reasonably fit for that use, and a consequent liability for a failure, attributable to defects in the processes of manufacture or in the materials employed. We must differ with the General Term in the supposition, as expressed in the opinion, that there was no evidence that the goods could not be made into coats which would stand the wear of ordinary felt cloths and, therefore, that it was not shown that the goods were unmerchantable; and in the further supposition that the strength of the goods could have been tested in the ordinary manner and that there was no latent defect discoverable upon use. The learned justices have overlooked the evidence in behalf of the plaintiffs in these respects. To be sure, that may have been the effect of the evidence introduced on behalf of the defendant; but it was in conflict with the plaintiffs' evidence. If the evidence of the plaintiffs is to be believed, the defendant improperly manufactured the felt cloth, or certainly some of it, which was delivered to the plaintiffs, by using what was called too short stock, or shoddy; as a consequence of which the cloth was "tender" and "uneven" and liable to separate, and "breaks," or holes, would appear upon exposure by wear. The evidence tended to show, on behalf of the plaintiffs, that the defect in the cloth was not discoverable upon inspection, and could not be tested as to its durability and quality, except

by actual wear.   The use of improper stock in the manufacture of the cloth might only make it tender and unserviceable in particular places and, therefore, this was not a case where the plaintiffs could be said to have been concluded by their acceptance and retention of the cloth for manufacturing into ulsters.   The obligation of the defendant would survive the plaintiffs' acceptance of the goods, if the latent defects were not discoverable upon inspection.   Upon all the evidence, the case should have been submitted to the jury, to determine whether there had been a breach of an implied warranty that the felt cloth should be merchantable.   It was for them to say whether it was unmerchantable and unfit for plaintiffs' purposes, because of the use of defective material and, if they believed the evidence to that effect and that the defect was not discoverable by the plaintiffs upon the usual and ordinary inspection and tests in such cases, they would be justified in awarding damages to the plaintiffs; measured by the loss shown by them to have been actually sustained, in the return upon their hands of defective ulsters, as well as in the manufactured coats left on hand, if unsalable because valueless through defects in the material from which made.

For the error, therefore, committed by the trial court in directing a verdict for the defendant, there must be a new trial of the issues, wherein the cause may be submitted to the jury upon the evidence.   Some of the rulings upon the admission and rejection of evidence are open to the criticism of excessive strictness against the plaintiffs, if not actually erroneous; but as there must be a new trial, they will not be discussed.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.