### MILLER et al. v. WINTERS et al.

(Supreme Court, Equity Term, Erie County. November, 1913.)

1. CONTRACTS (§ 205*)—PLUMBING AND HEATING—"WORKMANLIKE MANNER."

Where plaintiffs contracted to provide the plumbing and heating for defendants' house in accordance with a proposition submitted, the work to be done in a workmanlike manner, the agreement to do the work in a "workmanlike manner" covered not only the installation and construction of the plant, but the method or system used to accomplish the desired result.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 878, 905; Dec. Dig. § 205.*

For other definitions, see Words and Phrases, vol. 8, pp. 7523, 7524.]

2. CONTRACTS (§ 205*)—HEATING SYSTEM—EFFICIENCY—IMPLIED WARRANTY.

Where a contract provided for the installation of a heating system in defendants' house, the contract implied a warranty that the system installed would be proper and suitable for the purposes for which it was designed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 878, 905; Dec. Dig. § 205.*]

3. SALES (§ 262½*)—IMPLIED WARRANTY—WRITTEN CONTRACT.

An implied warranty may attach to a written as well as an oral contract of sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 740–748; Dec. Dig. § 262½.*]

4. SALES (§ 272*)—IMPLIED WARRANTY—ARTICLES TO BE MANUFACTURED.

A manufacturer of articles to be manufactured impliedly warrants that the articles sold are free from latent or hidden defects that render them unmerchantable at the time and place of delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 747; Dec. Dig. § 272.*]

5. CONTRACTS (§ 205*)—BUILDING IMPROVEMENT—HEATING SYSTEM.

Where a contract to furnish and install a heating system in a house was not based on specifications furnished to the contractor, but the manner and method of heating the house was left to him, he warranted the result he undertook to accomplish.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 878, 905; Dec. Dig. § 205.*]

6. CONTRACTS (§ 205*)—BUILDING IMPROVEMENT—HEATING SYSTEM—INSTALLATION.

Where a contract to install a heating system in a house consisted of the owners' acceptance of a proposal which provided for the installation of 325 feet of "three col. 38″ radiators," the contractor did not warrant that such amount of radiation would be sufficient to satisfactorily heat the house, and was not therefore required to furnish, without expense to the owner, 100 additional feet subsequently found necessary to supply the requisite amount of heat.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 878, 905; Dec. Dig. § 205.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by George O. Miller and another against Josephine Winters and another. Judgment for plaintiffs.

Payne & Lindsay, of Tonawanda, for plaintiffs.

Irving W. Cole and H. Edson Webster, both of Buffalo, for defendants.

WHEELER, J. This action is brought to foreclose a mechanic's lien for a balance claimed to be due under a contract for installing certain heating apparatus in a house erected by the defendants. The defendants proposed the erection of a house, drawing their own plans for the building. These plans, so far as prepared, only showed in a general way the size of the house and the arrangement and size of the various rooms of the dwelling. They did not show any arrangement of the heating apparatus, and there were no specifications of any kind touching those matters. Carl Winters, the husband of the defendant, took these general plans to the plaintiffs, who are plumbers and engaged in putting in heating apparatus. He stated he proposed to build a house of the character shown, and asked for figures on the heating and plumbing. In a few days after this, the plaintiffs sent Winters the following letter:

"M/20/10.

"Mr. C. Winters, Tonawanda, N. Y.—Dear Sir: We will agree to furnish the following fixtures and do all sewering inside of house for the connection of those fixtures, also leaving connections for four conductors; for

1. 5 ft A. bath tub
1. Lowdown washdown closet,
1. Hopper              "
1. 18x30 A. White Enam. Sink
1. 22 "    "    "    "    Basin.

"All the bath room fixtures to have N. P. pipes and traps above the floor and the sink to have N. P. Bibbs. The hot water boiler to be 40 gallon and connected with the other fixtures to hot and cold water pipes. The heating boiler to be an 18–2 W. Niagara boiler, and the radiation to be three col. 38", to the amount of 325 feet. The boiler and all piping in cellar to be covered with asbestos covering and the radiators to be neatly bronzed. The plumbing and heating as above to be done in a workmanlike manner and for the sum of three hundred and eighty ($380) dollars.

"Respectfully yours,                    Miller Plumbing Co."

Winters later called on the plaintiffs and told them that the job was theirs. That constituted the transaction so far as the agreement of the parties is concerned. The plaintiff supplied the parts contracted for, and connected them up with the necessary piping. When, however, it was attempted to operate the heating system installed, it would not heat the house, and it was impossible to maintain the temperature of the rooms to a degree of warmth necessary to be comfortable in ordinary cold weather. In other words, the system as installed failed to properly work, and, in order to make it work, it became necessary to tear out and rearrange the piping, change the position of some of the radiators, and also to supply some additional radiation. When this was done, the heating worked properly. The necessary expense of making these changes the defendants seek to counterclaim against the plaintiffs. The defects complained of go to the system or arrangement

of the piping and of the radiation, and not to the mere mechanical execution of the work.

The plaintiffs contend that they supplied everything they contracted to supply, and there is no express warranty that the system installed would heat, and that the law will not infer any implied warranty or guaranty that it would work, and therefore the counterclaim cannot be upheld.

On the other hand, the defendants contend that they were not familiar with what was required to properly heat the house in question, and left those matters entirely to the knowledge and judgment of the plaintiff, not presuming to say or dictate as to how the result should be accomplished. That there was not only an express warranty of good workmanship which covers the defects complained of, but, if the warranty is not broad enough to cover defects as to the system, the law will imply such a warranty.

[1] We are of the opinion that the agreement expressed in the plaintiffs' letter, providing that "the plumbing and heating as above to be done in a workmanlike manner," covers not only the mere detail of finishing a joint or attaching a pipe, but also covers the method or system used to accomplish the desired result. It would be idle to contend that, if a trap to a toilet failed to trap the fixture, it was done "in a workmanlike manner," although the mechanical execution of the work was well done. So, too, we think no system of heating can be said to have been done "in a workmanlike manner" when it failed to heat by reason of the piping being too small for the purpose, or for any other reason within the common knowledge of one familiar with the requirements of that class of work.

[2] Assuming, however, that the guaranty of good workmanship does not extend to the sufficiency of the system installed, nevertheless we are of the opinion that the law will import into the contract an implied agreement that the system of heating installed will be proper and suitable for the purposes for which it was designed, namely, the proper heating of the house. This is not the case of a sale of specific articles simply, but a contract for the doing of certain work, to accomplish certain results.

[3] It is well established that an implied warranty may attach to a written as well as to an unwritten contract of sale. Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422; Howard Iron Works v. Buffalo Elevating Co., 113 App. Div. 562, 99 N. Y. Supp. 163, affirmed in 188 N. Y. 619, 81 N. E. 1166; Bierman v. City Mills Co., 151 N. Y. 482, 45 N. E. 856, 37 L. R. A. 799, 56 Am. St. Rep. 635; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86.

[4] Consequently the rule is that the manufacturer of articles to be manufactured impliedly warrants that the articles sold are free from latent or hidden defects that render them unmerchantable at the time and place of delivery. Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422; Howard Iron Works v. Buf. Elevating Co., 113 App. Div. 562, 99 N. Y. Supp. 163; Bierman v. City Mills Co., 151 N. Y. 482, 45 N. E. 856, 37 L. R. A. 799, 56 Am. St. Rep. 635.

In the case of Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86, the doctrine of implied warranty was applied to the builder and manufacturer of a bridge sold by it to another, where certain defects in construction developed.

[5] There is even greater reason for applying this rule to one who undertakes to do a specific piece of work and supply the necessary materials for doing it, for in such a case the undertaker knows what is to be done and the result to be accomplished, and he also knows that the manner and method of accomplishing the desired result is left to his judgment, knowledge, and experience. It will not do, in such cases, to permit the contractor to say that he did not, in specific and express terms, guarantee the result he undertook to accomplish. If in this case specifications had been furnished, and the plaintiff had simply agreed to carry out the specifications furnished, then clearly he could not be held responsible for a failure of the system to properly work. But no specifications were furnished and the manner and method of heating the house was left entirely to the plaintiffs.

[6] It will be noted that by the contract the plaintiff only agreed to supply "radiation" to the amount of 325 feet, and some 100 more feet of radiation was necessary. As to this, then, the contract was specific and definite, and we are of the opinion that there can be no charge made against the plaintiffs for the additional radiation. The cost of that must be eliminated from the defendants' counterclaim. But as to the necessary cost of the other changes required to heat the house, we think the defendants are entitled to the counterclaim proven.

I reach the conclusion that the plaintiff is entitled to a lien on the premises described in the notice for the sum of $127.73, less the sum of $60 allowed upon the defendants' counterclaim, leaving a balance due the plaintiffs of $67.73. Inasmuch as each party has prevailed in part, no costs of this action are allowed to either party.

Let a decision be drawn in accordance with the views above expressed.