### 11199

#### WILLCOX IVES CO. v. BRAZZELL

##### (117 S. E., 203)

SALES—BUYER OF FERTILIZER ENTITLED TO RELY ON MANUFACTURER'S FUR-NISHING PRODUCT REASONABLY FIT FOR INTENDED PURPOSE.—In an action for the purchase price of fertilizer, *held,* that the fact that defendant, who counterclaimed for injury to his crops because of borax in the fertilizer, knew that the fertilizer had Trona potash in it did not show that he knew of and took the risk of the presence in the fertilizer of borax, although Trona potash does contain borax, so as to preclude the claim that defendant trusted to the skill and judgment of the manufacturer to supply an article reasonably fit for the purpose intended, especially where defendant alleged that there were other substances besides borax damaging to plant life in the fertilizer.

Before SEASE, J., Lexington, February, 1922. Affirmed.

Action by Willcox Ives & Co. against R. H. Brazzell. From a judgment for defendant on his counterclaim the plaintiff appeals.

*Messrs. Efird & Carroll* and *Timmerman, Graham & Callison,* for appellant, cite: *Analysis only proper way to establish contents:* 104 S. C., 125; 117 S. C., 137; 1 Civ. Code 1912, Secs. 2318, 2394; U. S., Comp. St. 1918, Sec. 8720.

*Messrs. Holman & Holman* and *E. L. Asbill,* for respondent, cite: Case controlled by 117 S. C., 137.

April 27, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant's argument contains this statement of this cause:

"This action is a suit on a note dated June 23, 1919, made by the defendant in favor of the appellant for the purchase price of fertilizers in the sum of $201.60.

"The answer denies liability on the note and also sets up a counterclaim for damages done to the crop of defendant under which the fertilizers were used, in the sum of $400. It is alleged that this defendant bought of L. L. Goodwin, the agent of the appellant, 30 sacks of 8-3-3 fertilizer, to be used in the cultivation of cotton on his plantation, upon the representation made by the appellant that the said fertilizer contained only the ingredients represented by the brands upon the sacks (8-3-3 fertilizer), and was accepted by the defendant and used accordingly, all of which representations were false and fraudulent. He further alleges that, instead of the crops under which the fertilizers were used being stimulated and the growth promoted as plaintiff had guaranteed it would do, the fertilizer caused the cotton to die and suffer damage to such an extent that said crop was practically worthless and made practically nothing, all of which was due to the fact that the said 8-3-3 fertilizer, as defendant is informed and believes, did not come up to the guaranteed analysis as represented, and also contained a highly poisonous and damaging substance to plant life, known as anhydrous borax (1 per cent. plus), and other poisonous and damaging and deleterious substances or materials damaging to plant life, all of which were known to the plaintiff and sold with intent to defraud the defendant.

"The case resulted in a verdict for the defendant for the sum of $400."

### Argument

"There are several exceptions, but the decisions of two principles will practically cover all of the phases of the controversy raised by the exceptions.

"One question raised by the exceptions is that the defendant bought a fertilizer with Trona potash in it, and, as he contended, this Trona potash had anhydrous borax in it, which borax injured and damaged the crops. He was estopped from claiming damage to his crops from the use of the potash by reason of the fact that he purchased what he wanted, and, if the potash contained borax, which was injurious to the crops, it was as much his business to know what he was buying as it was the business of the plaintiff to know what he was selling. In his testimony he says: 'I purchased 30 sacks of 8-3-3 fertilizer from L. L. Goodwin in the year 1919, and he told me it was good fertilizer; that it has Trona potash in it; that it was made in America.' "

"The contention of the defendant all the way through the case was to the effect that this fertilizer contained Trona potash, and that this Trona potash contained anhydrous borax, as alleged in his answer, and this anhydrous borax was the substance in the fertilizer which injured his crops. He offered no analysis of the fertilizer, but attempted to show that the fertilizer contained borax by describing the condition of the crop after planting and during the growing season, and by showing that those conditions in a growing crop would be usually superinduced by the presence of borax in the soil. He did not offer any testimony to show that that condition of the crops could be produced from no other cause, except borax."

The defendant alleged, not only anhydrous borax, but other poisonous and damaging and deleterious and foreign substances, or materials damaging to plant life.

The case of *Patterson v. Orangeburg Fertilizer Co.,* 117 S. C., 140, 108 S. E., 401, is conclusive of this case. At page 152 of 117 S. C., at page 405 of 108 S. E., we find:

" 'A manufacturer who sells an article of his own making impliedly warrants that it is free from latent defects arising from the process of manufacture or the use of defective material.' Note to 102 Am. St. Rep., 615, citing *Beers v. Williams,* 16 Ill., 69; *Bierman v. City Mills Co.,* 151 N. Y., 482, 45 N. E., 856, 37 L. R. A., 799, 56 Am. St. Rep., 636; *Rodgers v. Niles,* 11 Ohio St., 48, 78 Am. Dec., 290.

" 'Where a manufacturer contracts to supply an article of his own make or manufacture, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment and skill of the manufacturer, the law implies a warranty that it shall be reasonably fit for the purpose to which it is to be applied.' Note 102 Am. St. Rep., 617."

The judgment appealed from is affirmed.