## STACKFLETH v. DEMUTH GLASS MFG. CO.

(Supreme Court, Appellate Term.    December 13, 1898.)

1. SALES—CONFLICT OF EVIDENCE—WARRANTY.

Where the plaintiff's assignor testifies that the defendant's manager saw the goods, and had the opportunity to examine them, and that there was no express warranty, and it appears that he is a man skilled in the business about which the goods were to be used, there is sufficient evidence to support a finding that there was no express warranty, though the witness did not specifically swear that the manager examined the goods, and the manager testifies that there was a warranty.

2. SAME—LATENT DEFECTS.

Where melting pots that, in the ordinary usages of glass-making, should be subjected to a heat of 1,800 to 2,700 degrees, melt in a fire that is roughly estimated to be from 2,000 to 2,400 degrees, there is not sufficient evidence of latent defects therein to overthrow a finding to the contrary.

Appeal from municipal court.

Action by Paul Stackfleth against the Demuth Glass Manufacturing Company. From a judgment for the plaintiff, the defendant appeals. Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Jones & Titcomb, for appellant.
Weil, Wolf & Kramer, for respondent.

GILDERSLEEVE, J.    The action is brought to recover $138 for six melting pots, for use in glass furnaces, sold and delivered by the plaintiff's assignor, the manufacturer, to defendant. The answer denies the sale, questions the jurisdiction of the court, and sets up a counterclaim. On the trial, however, as appears from the stenographer's minutes, the only defense presented was the counterclaim, based upon an alleged warranty. An itemized statement of the goods sold, and prices charged therefor, is set forth in plaintiff's bill of particulars annexed to the return. The defendant claims that, by reason of their inferior quality, some of these pots melted away in the heat of the furnace, and that a loss of $184 resulted therefrom to defendant, which sum is demanded in the counterclaim. There is a sharp conflict of evidence as to the warranty. The plaintiff claims that the manager of the defendant corporation, who is shown to be a man of much experience in the business, called on one of the firm of Newkumet & Co., the plaintiff's assignor, and told him that he wanted pots for use in glass-making furnaces; that he asked plaintiff's said assignor if he had such and such a size; that the vendor showed the vendee the pots, and asked him if they were satisfactory; that, in reply, he received an order to send them the next day; and that said manager "put down on his own envelope the price, condition, and everything." The witness does not specifically swear that the manager examined the goods, but the inference to be drawn from his

testimony is that the defendant's agent did examine the pots, or, at least, had an opportunity to do so, before he bought them. And the said witness denies that the said manager asked any questions as to quality, or that any warranty was given. On the other hand, the vendee claims that he did not examine the goods, as it was too dark for him to see them well, and that he took them on the warranty of the vendor as to their quality and fitness for use in a glass-melting furnace. Upon this conflict of evidence, the justice found for the plaintiff, and there is sufficient testimony to support the finding that there was no express warranty. The defendant, however, claims that there was a warranty implied by law.

It is unquestionably settled that a manufacturer, who sells goods of his own manufacture, impliedly warrants that they are free from any latent defect growing out of the process of manufacture. See Carleton v. Lombard, 149 N. Y. 137, 43 N. E. 422. The question in the case at bar is as to the existence of any latent defect in the pots, growing out of the process of their manufacture. No specific defect, or unsuitability, in the pots appears to be alleged, other than the fact that they did melt, and the conclusion to be drawn therefrom.

It appears that great care and precaution are required in the management of these pots, but defendant's two witnesses testify that such care and precaution were taken by defendant's employés. The evidence shows that these pots do not melt, unless they are of inferior quality, or are subjected to an undue extreme of heat, or are subjected to the action of some chemicals. The degree of heat to which pots used in a furnace of the kind referred to in the testimony are expected to be subjected is from 1,800 to 2,700 degrees. The defendant's witnesses say that the heat to which the pots in question were subjected amounted to over 2,000, or from 2,200 to 2,400, degrees; but they allege that some other pots, subjected to the same heat, did not melt. It will be seen, however, that the pots were subjected to much more than the minimum degree of heat expected of them, i. e. 1,800 degrees; although, according to the testimony of these witnesses, the heat fell short of the maximum intensity which pots used in glass-melting furnaces are expected to support, i. e. 2,700. The evidence, however, as to the degree of heat to which the pots were subjected, is not of such a definite nature as to carry conviction of its accuracy. One witness confesses that the temperature was not regulated, and guesses, from the amount of coal burned in 24 hours, that the heat was "over 2,000 degrees"; while the other witness places the intensity at something between 2,200 and 2,400 degrees. It does not appear that either of these witnesses had any particular knowledge on the subject, especially the one who fixed the intensity at from 2,200 to 2,400 degrees, i. e. the general manager of defendant. The heat may well have been 2,700 degrees, so far as any positive or convincing proof to the contrary appears. Upon the evidence presented, we are not disposed to interfere with the conclusion reached by the justice, as it cannot be said that the weight of evidence estab-

lishes either an express·warranty, or the existence of any latent defect in the pots in question, growing out of the process of manufacture.

Judgment affirmed, with costs.    All concur.