## DODGE v. DICKSON MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 14, 1902.)

### No. 4.

1. SALES—MANUFACTURED ARTICLES—IMPLIED WARRANTY.

Where a vendee has ordered an article of a manufacturer for a particular purpose, and has had the opportunity of inspecting it during the manufacture, and relies on his own judgment, there is no implied warranty against latent defects.

2. SAME—ACCEPTANCE—WAIVER OF DEFECTS—EVIDENCE.

A contract for the manufacture of a motor required the purchaser to furnish an inspector to pass on all workmanship, with power to reject such as should not conform to the agreement, and to signify acceptance before removal from the factory. Such purchaser, while claiming a failure to complete the contract in the time limited, and after his inspector had complained of defects in the construction and refused to accept the motor, accepted it in its condition, in order to get possession. The manufacturer subsequently sued for the contract price, and for extra work outside the contract. *Held*, that it was proper to exclude evidence as to the character of the tests made at the factory, for the purpose of showing their incompleteness, and, as to tests made after delivery, to show that alleged defects were such as not to be discernible until the motor was used, since the purchaser, by acceptance, waived the right to insist on a further test.

3. SAME—ACTION FOR PRICE—PRIMA FACIE CASE.

The contract price for the construction of a motor was not to exceed $4,000; and the manufacturer, in an action for the price and for extra work, showed that, after the motor was shipped, it sent the purchaser bills aggregating more than $4,000, and for extra work, and that the purchaser, having received and retained them, subsequently inclosed a statement of independent counter charges, which admitted the items for $4,000, and $383.68 for extras. *Held* sufficient to make a prima facie case for the aggregate of such items, since the claim by the purchaser that he was entitled to items in his claim did not affect his admission of the correctness of the manufacturer's charges.

In Error to the Circuit Court of the United States for the Southern District of New York.

Waldo G. Morse, for plaintiff in error.

Hamilton Wallis, for defendant in error.

Before WALLACE, Circuit Judge, and TOWNSEND, District Judge.

TOWNSEND, District Judge. This cause came here upon appeal from a judgment of the circuit court, Southern district of New York, entered upon a verdict in favor of the defendant in error, which was plaintiff below. The action was brought upon a contract to recover for machinery manufactured by plaintiff, and for extra work, labor, and materials outside of said contract. The defendant set up by counterclaim charges for materials furnished, and for expenses and damages by reason of imperfect work and failure to complete the contract within the time specified. The proposal contained in the following letter was accepted by defendant, and states the contract between the parties:

"New York, Feb. 15th, 1898.

"Arthur P. Dodge, Esq., 27 William Street, New York City—Dear Sir: We will build for you one of your class C, double truck, 8"x12" cylinder, motor cars, according to your plans, patterns, and specifications.

"I. We will furnish all labor and material, excepting as provided in paragraph II. below, at actual cost to us, plus 35% for superintendence, fixed charges, etc.; material furnished by us to be weighed as received by us from the manufacturers, or from our own forge and foundry. We will furnish you promptly with time cards showing the amount of work done by our workmen as the work progresses on the motor, as well as bills for all materials purchased by us, together with the weight of the same.

"II. We would not make the car body or furnishings, but would prefer to have you furnish material and build the same, to be delivered to us at our factory; and we will do whatever work is necessary to be done in connection with the completion of the motor car. You are at liberty to furnish the steel castings and condenser.

"III. We will agree to push the work of constructing the motor as fast as consistent with the furnishing of satisfactory materials and workmanship, and we estimate that we can complete it within two months from receipt of the necessary drawings and patterns. We will agree to complete the construction of the motor in accordance with drawings, specifications, and patterns, materials or parts, furnished us by you, within that time, provided no changes are made therein by you, or per your instructions, and that we are not delayed by failure on your part to furnish same to us as required for getting out the work, and also provided we are not delayed by strikes of workmen, or other causes beyond our control.

"IV. The payment for this motor to be as follows: On the above basis, and the total amount not to exceed four thousand (4,000) dollars for the completed motor, exclusive of the car body and furnishings; the same to be paid in full within three months after the acceptance of the completed motor; such acceptance to be based on your approval of materials and workmanship, as per drawings, specifications, and patterns, parts or materials, furnished by you, and to be given by you to us within ten days after the completion of the motor by us in accordance with such drawings, patterns, specifications, parts, and materials, and before the motor is removed from our works; this payment to be guarantied to us by the Metropolitan Trust Company of the City of New York, or otherwise satisfactorily secured.

"V. In view of the special nature of the work, we should require that you have an inspector at our works during the construction of the motor, who shall be competent and authorized by you to pass upon all materials and workmanship as the work progresses, and he shall have the right to reject all such as shall not be in accordance with this agreement.

"Awaiting your early acceptance, we are,

"Very truly yours, The Dickson Mfg. Co.

"Per ————."

In accordance with the provisions of this contract, the defendant sent Hodges, one of its employés, to plaintiff's factory; and he

remained there during the whole progress of the work, inspecting the materials and workmanship. The correspondence between the parties shows that he was a representative of defendant, such as was provided for in said contract. During this time he made frequent complaints to plaintiff, alleging unreasonable delays in the progress of the work, and imperfect materials and defective workmanship. After the working parts of the machine had been put together, it was connected with steam power and tested in the presence of Hodges and another representative of defendant. Plaintiff then presented to Hodges a paper stating that he (Hodges) accepted the work and approved the bill, and plaintiff refused to ship the machine until Hodges should sign said paper. Hodges declined to sign it, stating that the work was poor, and the bills were not in a condition to be approved. Plaintiff then wrote defendant as follows:

"New York, May 31st, 1898.

"Arthur P. Dodge, Esq., Lords Court Building, New York—Dear Sir: Your representative at Scranton refused to-day to accept the motor car which we have built for you, and also said he was not in a position to approve the bills therefor. Of course, as it is a part of our agreement that we have such acceptance and approval before shipment of car from our works, we are holding it.

"Yours truly,                                    The Dickson Mfg. Co.,
                                                  "Per H. J. Davis."

Plaintiff replied as follows:

"June 1st, 1898.

"Dickson Mfg. Co., 40 Wall Street, New York City—Gentlemen: Your letter of 31st ult. just received, and I note that you say that my 'representative at Scranton refused to-day to accept the motor car which we have built for you,' etc. Mr. Hodges, my representative, writes me this morning that you refused to allow the car to be shipped after it was loaded, unless he would not only accept and approve all of the work and material, but would approve of your bill for the same, which account has not yet been presented or even made out, and which could not be approved, certainly, before presentation. There is nothing in our contract that requires the approval of your bills before you deliver to us the result of your work and material. All that we are required to do is to accept the work and material when ready to be delivered to me. Hence I hereby accept and approve of all the material and work as placed upon the car ready for shipment to Wilmington to-day, in accordance with our contract of February 15, 1898, and now request that you telegraph to have the car shipped to Wilmington at once. Whenever you have your account ready, together with the time cards, &c., I shall be very glad to receive the same, and will then consider the correctness of the account. Awaiting your prompt reply, I am,

"Very truly yours,                              Arthur P. Dodge."

The motor car was then shipped to Wilmington in accordance with said request.

Plaintiff further showed that it had supplied extra work and materials upon the order of said Hodges, and that on June 2d it rendered to defendant a bill for $4,000 for said motor, and for $936.59 for extra work.

On August 12, 1898, defendant sent a letter and statement to plaintiff, the material portions of which are as follows:

"August 12, 1898.

"Dickson Mfg. Co., 40 Wall Street, City—Gentlemen: The total for the 'completed motor,' exclusive of the car body and furnishings, it is agreed

by the terms of your contract of February 15th, 1898, with me, is not to exceed $4,000. From this $4,000 should be deducted such bills as I have paid, which make up the cost of the 'completed motor.' * * * Inclosed find a statement showing what I make the balance due you to this date, viz., $1,377.31.

"Yours very truly,                         Arthur P. Dodge."

"Statement of Cost of Car No. 5.

1898.

| | | | | |
|---|---|---|---|---|
| June 30. | See Pusey & Jones Co.'s bill for labor and materials at Jackson & Sharp Co........... | $ 64 67 | | |
| July 7. | do         do         ............ | 25 42 | | |
| July 20. | do         do         ............ | 17 68 | | |
| | | | $ 107 77 | |
| July 26. | See Jackson & Sharp's bill extra work... | | 1,637 66 | |
| Mar. 28. | Paid Abendroth & Root Mfg. Co. for condenser ..................................... | | 491 31 | |
| Mar. 25. | Paid Penn Steel Casting & Machry. Co. for castings used in the car..................... | | 207 60 | |
| April 9. | Paid Crosby Steam Gauge & Valve Co.... | | 6 00 | |
| July 5. | Paid C. C. Jerome Packing Co. for packing ................................................ | | 40 00 | |

| | |
|---|---|
| Dr. Dickson Mfg. Co...................................... | $2,490 34 |
| Cr. Dickson Mfg. Co. as per contract..................... | $4,000 00 |
| Cr. Dickson Mfg. Co. as per bill of extras April 1, 1898...... | 388 68 |
| | $4,388 68 |
| Less Dr. Dickson Mfg. Co. as above................... | 2,490 34 |
| | $1,898 34 |

Less additional charges:

| | | |
|---|---|---|
| Labor and attendance in moving motor from Babylon, L. I., to Chesterfield, Mich........... | $111 54 | |
| Say same amount of cost in returning motor to Babylon, L. I................................. | 111 54 | |
| Freight on motor from Babylon, L. I., to Chesterfield, Mich. ................................. | 141 90 | |
| Say same amount for returning motor........... | 141 90 | |
| Paid boiler inspector at Detroit, Mich............. | 5 00 | |
| June 13. Additional charge for insurance on motor and boiler at New Baltimore, Mich........ | 9 15 | 521 63 |

| | |
|---|---|
| Amount due Dickson Mfg. Co............... | $1,377 31" |

The court charged the jury that the plaintiff, on this evidence, had made out a prima facie case for $4,388.68; that defendant, by its inspection and acceptance, had waived its right to object to defective materials and workmanship, and to charge for putting said motor car in condition in which it would work properly.

The defendant relies upon the rule that in a contract by a manufacturer there is an implied warranty of good materials and skillful workmanship, and, where the manufacturer is notified that the article is to be manufactured for a particular purpose, there is an implied warranty against latent defects arising in the process of manufacture which would render it unfit for the purpose stated. But defendant has failed to note the exceptions that, where a known and described article is thus ordered for a particular pur-

pose, there is no warranty that it shall answer the particular purposes intended by the buyer, where the manufacturer actually supplies the thing ordered (De Witt v. Berry, 134 U. S. 306, 313, 10 Sup. Ct. 536, 33 L. Ed. 896; Seitz v. Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837), nor where the buyer relies on his own skill or judgment. The foundation of the doctrine of warranty is the responsibility of a vendor for deception. Hoe v. Sanborn, 21 N. Y. 559, 78 Am. Dec. 163. Hence, where a vendor is a manufacturer, and the vendee has ordered an article for a particular purpose, and has not had an opportunity of inspecting it during the manufacture, the vendor is presumed to have had knowledge of latent defects produced by the process of manufacture, and must be held liable therefor. Bridge Co. v. Hamilton, 110 U. S. 108, 114, 3 Sup. Ct. 537, 28 L. Ed. 86; Bierman v. Mills Co., 151 N. Y. 482, 490, 45 N. E. 856, 37 L. R. A. 799, 56 Am. St. Rep. 635. But where the vendee has an opportunity of inspection, and relies on his own judgment, there is no presumption of deceit, and no warranty is implied. Cunningham v. Hall, 4 Allen, 273, 274.

The defendant contended that under the written contract, Exhibit A, it was entitled to demand a final test of the completed motor at plaintiff's works, in order to determine its fitness for the purpose desired, and that inasmuch as it was incomplete when it was shipped to Wilmington, Del., the defendant had the right to make said final test at Wilmington; that the acceptance of the motor at plaintiff's works was only an acceptance of such material and workmanship as was there capable of determination, but that there was an implied warranty against latent defects which survived such acceptance; and that the question of compliance with said warranty could only be determined by such final test at Wilmington. In support of this contention, the defendant, upon the trial, offered evidence of the character of the tests made at Scranton, for the purpose of showing that such tests were necessarily preliminary and incomplete, because, inter alia, the parts necessary to a complete motor car had not been assembled; and of the character of the tests made at Wilmington, in order to show that the alleged defects were such as not to be discoverable until the body of the car was mounted upon and connected with said machinery. The court excluded this evidence on the ground that defendant, by its letter of June 1st, had expressly accepted the motor in its then condition at Scranton, and had thereby waived its right to insist on a further test. On May 10th the defendant had written to the plaintiff as follows:

"I believe that, by the terms of our contract, we were to inspect and accept at your works in Scranton the work you are constructing for us, when you say it is ready therefor, if found correct. By reason of the great delays, and for other reasons, it seems to be desirable that we go to the additional expense of shipping such work, namely, the trucks, boilers, condensers, etc., from Scranton to the Jackson & Sharp Co., at Wilmington, Delaware, for erection. I wish to ask if you will be willing to so modify our contract as to permit of such testing and acceptance by us after they shall reach the shops of Messrs. Jackson & Sharp, instead of at your own works, as previously arranged."

Plaintiff did not consent to this modification. Its only reply was contained in said letter of May 31st, where, after stating the refusal of the inspector to approve and accept, it says:

"Of course, as it is a part of our agreement that we have such acceptance and approval before shipment of car from our works, we are holding it."

Under the original agreement, defendant was to furnish his special inspector to pass upon all material and workmanship, with power to reject such as should not conform to said agreement; to build the car body and furnishings, and deliver the same to plaintiff at its factory, the plaintiff doing there whatsoever work might be necessary for the completion of the motor car; to pay after acceptance of the motor thus completed, such acceptance to be based on his approval of materials, workmanship, etc., according to the drawings, etc., furnished by defendant, and to be signified before the motor should be removed from plaintiff's works. Even if defendant, under his original agreement, might have claimed a further test, such right was waived by the subsequent acts and correspondence. Three months and a half after the making of the agreement, defendant, while claiming that plaintiff had failed to complete the contract within the time limited, and after his inspector had complained that there were serious visible defects in the construction of the motor, and after having learned from plaintiff that said inspector had refused to accept said motor, and after having failed to furnish the car body as agreed, the presence of which defendant admits was necessary to finally test the fitness of the motor, writes to plaintiff in response to its refusal to ship before acceptance as follows:

"All that we are required to do is to accept the work and material when ready to be delivered to me. Hence I hereby accept and approve of all the material and work as placed upon the car ready for shipment to Wilmington."

It cannot be said that plaintiff impliedly consented to a further test at some other factory, or that the alleged implied guaranty survived and was imported into the new contract. On the contrary, the correspondence shows that both parties understood the limitations of the original contract, and the effect of such modification. The defendant had the right to refuse to accept and approve said motor, provided it was not completed within the time limited, or because of defective workmanship and material. He might have had the right, if he had furnished the car body, to insist upon a final test of the completed motor car. He did none of these things, but elected to waive his rights, under conditions known to him, and to accept and approve what his inspector had refused to accept and approve, in order that he (the defendant) might obtain possession of the motor. There was no error in the exclusion of said evidence.

The defendant further contends that the court "erred in holding that there was sufficient proof of the value in the theory of the account stated." The facts in regard to this exception are as follows: The agreement provided that the total amount of payment for the motor should not exceed $4,000. The plaintiff claimed that the cost of the motor to it, plus the agreed manufacturer's profit, exceeded

$4,000. Instead of showing the cost of labor and materials, it proved that, shortly after the motor was shipped to Wilmington, it sent to defendant bills for the motor aggregating more than $4,000, and for extra work aggregating $936.59, and that defendant, having received and retained them, made no response until August 12th, when he wrote plaintiff, inclosing a statement of independent counter charges made by him, which statement and letter credited and admitted the $4,000 item for car "as per contract," and $388.68 of plaintiff's bill for extras. Thereupon the court charged the jury that in these circumstances, and upon defendant's admission that the $4,000 limit had been exceeded by said bills, and the concession of the $388.68, the plaintiff had made out a prima facie case for $4,388.68. The defendant contends that "the whole statement or admission must be submitted,—both the favorable and unfavorable parts." The whole of said statement was admitted in evidence and submitted to the jury, except certain items for additional work to put the car in working condition, which were excluded on account of the acceptance by defendant already considered. The different parts of said account have no such connection that the admission of the amount due by defendant should entitle him to an allowance of the counter charges. The claim by defendant that he was entitled to the items therein in no way affects the admission of the correctness of plaintiff's charges.

The judgment is affirmed.