## MALCOMSON v. REEVES PULLEY CO.

(Circuit Court of Appeals, Sixth Circuit    February 23, 1909.)

### No. 1,856

1. SALES (§ 384*)—REMEDIES OF SELLER—REFUSAL OF PURCHASER TO ACCEPT DELIVERY.

   The measure of damages for the refusal of a purchaser to accept a completely manufactured article is not the purchase price, but the difference between the contract price and the market value at the time and place when acceptance is required.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1106; Dec. Dig. § 384.*]

2. SALES (§ 178*)—DELIVERY—ACCEPTANCE BY PURCHASER.

   Delivery by a seller to a carrier, selected by himself, of articles manufactured under a contract for their sale, without the authority or knowledge of the purchaser, does not constitute an acceptance by him under the contract.

   [Ed. Note.—For other cases, see Sales, Dec. Dig. § 178.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**8. Sales (§ 168*)—Delivery and Acceptance—Inspection and Approval—Time and Place for Inspection.**

Under a contract for the building of motor engines by plaintiff for defendant, which provided that they should be tested and accepted at plaintiff's plant, and that, in the absence of defendant's inspector, plaintiff's inspection should be accepted, inspection and acceptance at the plant before shipment were of the essence of the contract, and, unless waived, defendant had a right to make the inspection and test, and cannot be held to have accepted engines which were shipped without notice to him or an opportunity for inspection and test and before he knew whether any further deliveries were in fact to be made under the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–406; Dec. Dig. § 168.*

Contracts for sale of things to be produced or manufactured, see note to Star Brewery Co. v. Horst, 58 C. C. A. 363.]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

H. E. Spalding, for plaintiff in error.

S. T. Miller, for defendant in error.

Before SEVERENS, Circuit Judge, and KNAPPEN and SANFORD, District Judges.

KNAPPEN, District Judge. The defendant in error, plaintiff below (hereafter called the plaintiff), recovered judgment against the plaintiff in error (defendant below) for $12,411.62, upon an alleged cause of action arising from these relations:

On November 1, 1905, defendant contracted with plaintiff for the purchase of 500 "air-cooled" automobile engines, to be built by the plaintiff, and to be shipped in specified quantities each month over a period of six months, at the price of $320 per engine, net, f. o. b. plaintiff's works at Columbus, Ind. The engines were guaranteed to "develop approximately 20 H. P. brake test." The plaintiff's proposal (which, together with defendant's acceptance, made up the contract) contained this clause:

"Engines to be tested and accepted at our plant, Columbus, Indiana, and in absence of your inspector our statement of H. P. to be accepted by you, and in any event the conditions of this guarantee to cease and terminate with shipment of engines."

It was provided that defendant might transfer his rights under the contract to any company with "a credit and personnel satisfactory" to plaintiff. On January 5, 1906, defendant assigned his rights under the contract to the Aërocar Company, of Detroit, Mich., of which company defendant was president. Plaintiff consented thereto on condition that defendant "remain liable as surety thereon." The engines shipped under the contract do not appear to have proven satisfactory, and on July 7, 1906 (after 319 had been delivered), adjustment of the controversies arising was had by an agreement between plaintiff and the Aërocar Company, by which the latter agreed to settle for the motors up to that time delivered and not paid for at $300 per engine (less a rebate of $25 on each engine before paid for), by giving its promissory notes aggregating $27,542.14; and by which agreement plaintiff was required to "make all reasonable efforts to sell to third parties the balance of the

motors called for by said contract and not already shipped." It was then provided that "any such motors not exceeding 40 in number remaining unsold January 1, 1907, shall be tested and inspected as provided by said contract dated November 1, 1905, and if answering such test and inspection shall at the option of Reeves Pulley Company be shipped to and accepted by the Aërocar Company at $300.00 per motor [a reduction of $20 from the original contract price] net f. o. b." plaintiff's works at Columbus, Ind. It was provided that the original contract should be otherwise canceled, and the Aërocar Company relieved from liability for further motors than provided by the agreement of July 7, 1906. In connection with this adjustment, the defendant executed the instrument attached to the settlement contract in these words:

"I hereby agree to guarantee payment by the Aërocar Company of all notes mentioned therein and of the motors by it to be accepted after January 1, 1907, in accordance with the terms of said proposition, provided that the said Reeves Pulley Company shall with its acceptance of this proposition relieve me from all further liability under said contract."

No further relations seem to have been had between the parties until December 12, 1906, when the Aërocar Company wrote plaintiff inquiring what success was already had in disposing of the 40 engines, and if any were still unsold, what had been done toward selling them, expressing the hope that all would be disposed of, for the reason that it (the Aërocar Company) did not care for any more of plaintiff's air-cooled engines. Plaintiff two days later replied to the letter that it would be able in due time to report regarding the engines, and that it was using every effort to dispose of them, that it had spent a large sum in advertising, and had "several matters in brew with reference to their disposition, but can not tell at this time whether we shall be successful." The parties appear to have had no more relations upon the subject until January 3, 1907, when plaintiff sent the Aërocar Company a bill of lading of that date, together with an invoice for 40 engines at $300 each. The Aërocar Company at once wired plaintiff to hold the car of motors, and that it must insist upon its own inspection before shipment. Plaintiff replied that "engines were tested and inspected in compliance with the contract before shipping." The Aërocar Company refused to receive or accept the engines, for the reason that it had had no opportunity to inspect them. Plaintiff's proposition to allow the Aërocar Company to take its choice between those so shipped and certain others at the plaintiff's factory was declined. Plaintiff accordingly brought suit against defendant, the Aërocar Company not having been sued. The declaration contains a special count upon the refusal of the Aërocar Company to accept and pay for the engines. It contained also the common counts in assumpsit, a bill of particulars under which demanded payment for "40 motors or engines furnished by the plaintiff to the Aërocar Company at $300.00 each, payment thereof being guaranteed by defendant."

Upon the trial plaintiff gave evidence tending to show that it had made all reasonable efforts to sell to third parties the balance of the engines called for by the original contract, but had failed to the extent of the 40 engines shipped. The record is not clear that plaintiff sold to other parties more than two of the engines originally contracted to de-

fendant, or that more than 400 out of a total of 500 were ever built, the manufacture of "air-cooled" motors having been discontinued, by plaintiff in favor of the "water-cooled." The plaintiff also gave evidence of an inspection by its own employés of each of the 40 engines in question at or within a few days after the dates of the completion of the respective engines, the inspection dates ranging from May 28, 1906, to September 27, 1906, and being fairly evenly distributed over that period. About one-third of the engines were thus inspected previous to the agreement of July 7, 1906, and the last of them more than three months previous to January 1, 1907. Plaintiff also gave evidence tending to show that the method of test and inspection used was proper and effective. The defendant offered testimony tending to show that plaintiff's method of inspection did not furnish an adequate test of the power of the engines. There was no testimony that either the Aërocar Company or the defendant had ever seen or inspected the engines or been given notice or opportunity to inspect, or to be present at plaintiff's inspection; or that either the Aërocar Company or defendant knew when plaintiff's inspections were had. At the conclusion of the evidence the court, against the defendant's objection and exception, struck out all defendant's testimony, upon the apparent ground that the inspections made by plaintiff's employés at the time of the completion of the engines were binding and conclusive upon defendant in the absence of fraud, and that there was no evidence of such fraud, defendant's counsel indeed disclaiming "intentional fraud" in that regard.

Defendant's motion to strike out the testimony on behalf of the plaintiff as to the tests, because made before January 1, 1907, and because not made in the presence or with the participation of the defendant or of the Aërocar Company, and without notice of the making of such tests or opportunity to have such representation, was overruled, and defendant's request for direction of a verdict in its favor for substantially the reasons stated in the motion referred to was denied; as was its request to be permitted to go to the jury upon the questions of fact whether reasonable efforts were made by plaintiff to sell the engines, and whether the engines were manufactured and tested as the contract required; and the jury peremptorily instructed to render a verdict for the plaintiff for $12,411.62. The assignment of errors raises for review the action of the court in each of the respects mentioned, as well as in other respects not necessary to mention.

It is obvious that the court could have properly directed a verdict for the full purchase price only upon the theory that the Aërocar Company had actually accepted the engines. We say this because the measure of damages for the refusal of a vendee to accept a completely manufactured article is not the purchase price, but is the difference between the purchase price and the market value at the time and place when acceptance is required. This proposition is too well settled to require elaboration, or to justify more than the merest reference to authority. See Peters v. Cooper, 95 Mich. 191, 54 N. W. 694; Yellow Poplar Lumber Co. v. Chapman, 74 Fed. 444, 20 C. C. A. 503; Southern Cotton Oil Co. v. Heflin 99 Fed. 339, 39 C. C. A. 546, and cases cited.

The fact, if it existed, that the engines should have been accepted was **not** sufficient to raise a liability for the full purchase price, but only for

lamages for failure to accept. There was no evidence of the value of the engines at the time it is alleged they should have been accepted, much less evidence that they were valueless. Unless, therefore, it appeared beyond dispute that the engines were in fact accepted by the Aërocar Company, the court should not have directed a verdict for the purchase price, even assuming that the evidence showed beyond dispute that plaintiff had used all reasonable efforts to sell the engines to other parties. It is not seriously contended on the part of the plaintiff that there was any acceptance of the engines by the Aërocar Company except by virtue of the inspection of the engines by plaintiff's employés, as the same were from time to time manufactured. A suggestion was, however, made upon the argument that a delivery sufficient to answer the requirements of a sale to that extent might be predicated upon the delivery of the motors to the carrier at plaintiff's factory, and the acceptance by the carrier. No authority is presented, and we know of none, supporting a proposition that the delivery to a carrier chosen by plaintiff, without the vendee's authority or knowledge, constitutes the carrier the agent of the vendee to accept the engines, as a sufficient compliance with the contract, and to waive thereby a right of inspection given by the contract. That such delivery does not work out an acceptance by the vendee seems clear. Grimes v. Van Vechten, 20 Mich. 410; Pope v. Allis, 115 U. S. 363, 372, 6 Sup. Ct. 69, 29 L. Ed. 393.

Inasmuch as the contract provides that the engines are to be tested and accepted at plaintiff's plant, and makes plaintiff's inspection, in the absence of the Aërocar Company's inspector, a final acceptance by the vendee, an inspection and acceptance at the plant is, unless validly waived, a condition precedent to a right of action for the purchase price. Under such a contract the place of inspection is of the very essence. It has been repeatedly held that a statement in a mercantile contract descriptive of some material incident, such as the time and place of shipment, is ordinarily to be regarded as a condition precedent to the enforcement of the contract. Among the cases in which this proposition has been applied to the place of shipment are Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19, 29 L. Ed. 372. In Cleveland Rolling Mills v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920, the proposition was applied to the time of shipment. No reason is apparent, and none is suggested, why the rule as to the necessity of compliance with respect to place and time of shipment should not equally apply to place and time of inspection. These considerations made it unnecessary for the Aërocar Company to make a test and inspection of the engines upon their arrival at Detroit.

Plaintiff is thus compelled, in support of its contention that the engines were accepted by the Aërocar Company, to rely solely upon the proposition that the inspection by plaintiff's employés, made from day to day, extending over a period of nearly three months, had the force of an actual inspection and acceptance by the Aërocar Company, notwithstanding the latter had in fact never seen or inspected the engines, or been given notice or opportunity to inspect them, or to be present at plaintiff's inspection, nor did it know when plaintiff's inspections were

to be had. This proposition rests, as it must, upon the contention that it was the duty of the Aërocar Company to have its representative at the factory whenever plaintiff should be ready to make an inspection. It is undoubtedly the rule that if the Aërocar Company had been represented by an inspector as the engines were manufactured and tested, and had such engines been allowed to pass without objection, an acceptance would thereby have been accomplished under the terms of the contract so thoroughly as to preclude a subsequent defense of failure to meet the warranty. Carleton v. Jenks, 80 Fed. 937, 26 C. C. A. 265; Dodge v. Dickson, Manfg. Co., 113 Fed. 218, 51 C. C. A. 175. Such, also, would be the effect under the contract in question had the Aërocar Company unreasonably neglected or refused to have an inspector present on notice that plaintiff was ready to have the inspection made. But a construction of the contract requiring the Aërocar Company to have its representative at the factory whenever plaintiff should be ready to inspect motors in connection with their completion, and which has the effect of making the inspection on the part of plaintiff's employés, in the absence of and without notice to the Aërocar Company, amount to an acceptance by the latter of the engines, is, to our minds, entirely unreasonable. In the first place, the inspection of the 40 engines in question (which required at the most, in the case of each engine, but a very few minutes) extended over a period of nearly 90 days, not more than 3 engines being inspected on a given day, and the intervals between such dates of inspection ranging from one to 15 days. Under the original contract of November 1, 1905, and the later agreement of July 7, 1906, the Aërocar Company was given the right to be present and participate in any test to be made of the engines, and the right to be notified of the time of such inspection is necessarily implied.

As to the 13 engines inspected before July 7, 1906, the Aërocar Company cannot be held to have accepted plaintiff's inspection as final unless it either expressly or by necessary implication waived such notice and right to be present and participate, as by refusing or unreasonably delaying to appear when notified, or by a course of dealing so practically construing the contract as to require the Aërocar Company to inspect the engines as manufactured. As before said, there was no evidence of the existence of any of these features.

But as to the 27 engines manufactured after July 7th, it is clear that the Aërocar Company was neither bound nor expected to make the inspection until after January 1, 1907. Until that time it could not be known with certainty that the Aërocar Company would be called on to inspect or accept any of the engines, as it was possible and it was hoped that all might be sold to other parties. An inspection before that date would thus have been unreasonable. Moreover, the language of the contract of July 7th leaves no room for argument on this proposition, even as against the Aërocar Company, for the express provision is that "all such motors not exceeding 40 in number remaining unsold January 1, 1907, shall be tested and inspected."

But as to the defendant the case is, if anything, even more clear, for he guarantees the "payment by the Aërocar Company of * * * the motors by it to be accepted after January 1, 1907." It is upon

this guaranty that suit is brought, and the plaintiff can recover only by bringing his case within its terms, viz., by showing motors accepted after January 1, 1907, and not paid for. Whether recovery could be had for the 13 motors made before July 7, 1906, on showing an actual acceptance of them before that date, we need not now discuss, as the question may never arise. Had recovery been sought upon the theory that the Aërocar Company refused to accept (upon inspection or refusal to inspect) engines which they should have accepted, the rules we have suggested above, as to the right, necessity, and time of inspection, would apply.

The offer to substitute other engines for those shipped to Detroit in January, 1907, did not affect the defendant's right to stand upon the provisions of the agreement as to an inspection and acceptance at plaintiff's shops, for the reason that the Aërocar Company was merely given an option between the uninspected engines and engines which might or might not conform to inspection tests. The sufficiency of plaintiff's tests—provided that they were had in good faith—would seem immaterial. If the Aërocar Company was not given the opportunity to participate in plaintiff's inspection, the latter would cut no figure; and if, on the other hand, the Aërocar Company was given such opportunity but failed to take the benefit of it, the plaintiff's tests (made in good faith) would have been conclusive. But as the record stood, the court should, without reference to other considerations, have directed a verdict for the defendant. The conclusions reached require a reversal of the judgment.

The other questions raised by the assignments we pass by as unnecessary for consideration, in view of the conclusion reached. So far as they may be thought to involve error, they would seem unlikely to arise upon another trial.

A question arises whether under the guaranty of July 7, 1906, the defendant could be held liable in an action on account of the refusal of the Aërocar Company to inspect the engines, even though such refusal was unjustified; or whether, on the other hand, defendant's liability is limited to a guaranty of the payment of the purchase price of such engines as should actually be accepted; in other words, whether the guaranty can be construed as one of acceptance. We suggest this in view of the language of the instrument, which is in terms a guaranty of payment of two classes of items: first, the notes given for engines previously delivered; and, second, the engines "by it [the Aërocar Company] to be accepted after January 1, 1907"; and in view of the express release of the defendant from all liability under the contract except as provided by the terms of the guaranty. Inasmuch as a determination of this question is not necessary to a decision of the case here presented, and as it was not definitely raised in the court below and was not discussed in the briefs of counsel filed before the hearing in this court, we content ourselves with this reference.

The judgment of the Circuit Court will be reversed, and a new trial ordered.