## MANHATTAN CITY & INTERURBAN RY. CO. et al. v. GENERAL ELECTRIC CO. [*]

### (Circuit Court of Appeals, Eighth Circuit. September 7, 1915.)

### No. 4244.

1. SALES ⟺384—BREACH—MEASURE OF DAMAGES.

The measure of damages for breach of contract of sale of personal property is the difference between the market and the contract price, this rule applying to manufactured articles which are staple and have a known market value, but not to specially manufactured articles, and hence, though the article was manufactured in response to a particular order, evidence that it was a staple article was admissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ⟺384.]

2. SALES ⟺384—BREACH—EFFECT.

There should be nothing punitive in damages awarded for breach of a contract of sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ⟺384.]

3. SALES ⟺384—CONTRACTS—BREACH.

Whether an article is staple or not cannot be determined wholly by the form of the contract of sale, for when an article is ordered frequently specifications are merely to indentify the article as of a particular class.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ⟺384.]

4. EVIDENCE ⟺471—SALE—BREACH OF CONTRACT—OPINION EVIDENCE.

In an action for the buyer's breach of a contract of sale where the manufacturer claimed that the article was one of special manufacture, evidence of the number of such articles used in the trade, rather than opinion evidence as to whether it was special or not, should be given.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2151; Dec. Dig. ⟺471.]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the General Electric Company against the Manhattan City & Interurban Railway Company and others. There was a judgment for plaintiff, and defendants bring error. Reversed, with directions to grant a new trial.

F. S. Jackson, of Topeka, Kan. (R. P. Evans, of Manhattan, Kan., on the brief), for plaintiffs in error.

David F. Carson, of Kansas City, Kan. (James T. Cochran, of Kansas City, Kan., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[*]Rehearing denied November 10, 1915.

AMIDON, District Judge.   [1] This action was brought by the General Electric Company against the Manhattan City & Interurban Railway Company on a contract in which the plaintiff agreed to manufacture and sell to the defendant an electrical generator and certain accessories, at the agreed price of $3,736.   The contract is in the form of a proposal from plaintiff to defendant, and an acceptance by defendant.   When plaintiff had completed the machinery, and had it ready for shipment, it asked for shipping directions.   For one cause and another such directions were delayed.   Finally the Manhattan Company decided to put in another system based on a supply of electric current from water power.   It had negotiations with the plaintiff looking to the abandonment of the contract, and the supplying by plaintiff to defendant of extensive machinery, whose purchase price amounted to some $10,000, to be used in installing this later system.   Finally, however, the defendant did not purchase its machinery for this new plant from plaintiff.   It also declined to accept the machinery covered by the contract, and asked to be released therefrom upon what is referred to in the correspondence as a cancellation charge.   This led to a complete disagreement between the parties, and the present suit was brought, resulting in a judgment in favor of the plaintiff for the full contract price.   All the assignments of error are based upon the claim that the trial court adopted an erroneous measure of damages and refused to permit the defendant to introduce what would have been competent evidence if another measure of damage had been entertained.   The theory of the plaintiff which was adopted by the trial court was that the contract provided for the manufacture of a special article which had no market value.   The machinery has never been accepted, and is held at plaintiff's factory at Schenectady, N. Y.   Plaintiff, however, insists that it holds the property subject to defendant's order, and is entitled to recover the full purchase price.   Defendant, on the other hand, insists that the articles covered by the order are staple articles, having a recognized market value and a ready sale; and that the proper measure of damages is the difference between such market price and the contract price.   It offered to prove these facts, but was denied the right to present evidence of that kind by the trial court, to which an exception was saved.

We think this was error.   The measure of damages for the breach of a contract of sale of personal property is the difference between the market and the contract price.   This rule applies to manufactured articles when they are staple and have a known market value and a ready sale.   Kingman v. Western Mfg. Co., 92 Fed. 486, 34 C. C. A. 489; Malcomson v. Reeves Pulley Co., 167 Fed. 939, 93 C. C. A. 339; 2 Sedgwick on Damages, § 752, p. 1568 (9th Ed.); Williston on Sales, § 564.   The only reason for applying a different rule to manufactured articles is that sometimes they are made for a special purpose, and have no value except to the person who intends to apply them to that purpose.   If he rejects them in violation of his contract, there is no market in which the maker can easily sell them in the usual course of trade.   At the time when the rule was first developed in regard to manufactured articles, such articles were usually made

to fill a special order, and often embodied the idiosyncrasies of the buyer. This was the case in Bement v. Smith, 15 Wend. (N. Y.) 493; Shawhan v. Van Nest, 25 Ohio St. 490, 18 Am. Rep. 313; and Ballentine v. Robinson, 46 Pa. 177. They involved such articles as a carriage, a farm wagon, and an engine. At that time such articles were usually made to fill a special order, and the law was responsive to the industrial conditions then existing. A great revolution has since taken place in industry. The standardization of machines and parts of machines has been one of the capital features of industrial progress. At the present time, everything from farm implements to railroad locomotives are standardized, and their parts made in large numbers. The manufacture of any specific machine consists simply in assembling the parts. Such articles are now quite as staple merchandise in the world of trade as were ordinary goods and wares a generation ago. Every large manufacturer, like the plaintiff, is a merchant on a larger scale and in a truer sense than was the old storekeeper at the middle of the last century. In applying the law courts must take cognizance of such changes. To allow the seller to recover the full purchase price of an article, and compel the buyer to accept it whether he wants it or not, is to grant specific performance of a contract for the sale of personal property in favor of the seller, when no such relief could or would be granted in favor of the buyer. This is against the well-established doctrines of courts of equity. It not only contravenes the rule that damages are a plain, speedy, and complete remedy for such a wrong, but imposes a grave hardship upon the buyer without any corresponding benefit to the seller. When the article is really a special manufacture to meet the peculiar needs of the buyer, and having no sale in the market, then every consideration which supports the specific performance of a contract for the sale of real property is present. Damages are not an adequate remedy for the breach of such a contract. On the other hand, if the article is staple, and has a ready sale in the market, the seller who still retains it is given the full benefit of his contract when he is awarded as damages the difference between the contract and the market price. The vendor is always in touch with the market. It is easy for him to resell the article. The vendee has none of these advantages. Again, in a case like the present, when the article is still in the hands of the manufacturer at a remote point, the expense of shipment is saved. The article is left in the hands of the vendor to be shipped directly to another purchaser. The vendor can look to the whole field of commerce to find the most advantageous buyer. The vendee has none of these facilities for disposing of the article if he is compelled to accept it.

[2] There should be nothing punitive in the damages which courts award for the violation of a contract of sale. Compensation is all that the seller is entitled to. It is certainly as much the duty of courts as of parties to mitigate damages when that can be done consistently with awarding full compensation.

[3] Whether an article is staple or not cannot be determined wholly by the form of the contract. When such an article is ordered, there are frequently embodied in the contract specifications quite as definite

as those embodied in the contract here in suit. The object of such specifications, however, is not to guide the manufacturer in producing a specific article to supply the contract, but rather to identify clearly a staple article of a certain class. It is not true to the actual facts of industry to say that an article covered by such an order is a special manufacture to meet the vendee's requirement as that rule has been used in earlier decisions. The article at the present time is seldom manufactured specifically for the vendee. The only object of the specifications is to clearly identify an article of a specific class.

[4] It was the duty of the trial court to ·receive evidence from the plaintiff, as it did, tending to show that the generator was a special manufacture to fill defendant's order, and has no staple market value or ready sale. It was, however, equally incumbent upon the trial court to receive evidence from the defendant tending to show that the generator was a staple article of commerce, having an established market value, and a ready sale. The evidence offered by the defendant was competent, and should have been received. As the case is to be again tried, we think we ought to add, however, that it was not the most satisfactory ·evidence to guide in· the determination of this issue. Whether the article was a staple article of commerce ought to be determined not simply by the opinion of men having a somewhat limited experience in the general field of electrical trade, but ought to be shown by the actual process of manufacture of such articles, and especially by the number of generators of the particular class sold annually. Opinion evidence certainly ought to be supplemented by the actual facts of the trade.

The judgment is reversed, with directions to grant a new trial.