### TEMPLAR MOTORS CO. v. BAY STATE PUMP CO.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1923.)

No. 3774.

1. **Appeal and error ⬤⟫1008(2)—Findings of fact of trial court conclusive, where jury is waived.**

    Where a jury is waived, findings of fact by the trial court, if sustained by any substantial evidence, are conclusive in the appellate court.

2. **Appeal and error ⬤⟫265(1)—Whether special findings of trial judge support judgment may be reviewed without exception.**

    Where a jury is waived, whether the special findings made by the trial judge support the judgment may be reviewed, without exceptions taken.

⬤⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes,

**3. Sales ⊗⟫384(6)—Breach of contract of sale by buyer.**

Under Uniform Sales Acts of Massachusetts and Ohio, where defendant refused to accept further deliveries of primers for automobiles, under a contract with plaintiff for their manufacture, and plaintiff had on hand unfinished primers to fill the contract, for which there was no sale if completed, its measure of damages for breach of the contract was the contract price, less the labor cost of their completion and the salvage value of the material.

**4. Evidence ⊗⟫179(1)—Admission of secondary evidence held not reversible error.**

Admission of the testimony of the general manager of a manufacturing corporation as to the cost of completing certain appliances, of which the corporation had manufactured a large number, based in part on its cost records, which were at a distance from the court, and in part on information from a shop foreman, *held* not reversible error.

Error to the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by the Bay State Pump Company against the Templar Motors Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Louis W. Wickham, of Cleveland, Ohio (Reed, Meals, Orgill & Maschke, of Cleveland, Ohio, on the brief), for plaintiff in error.

Nathan R. Park, of Cincinnati, Ohio (Herrick, Hopkins, Stockwell & Benesch, all of Cleveland, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is to review a judgment rendered in favor of the defendant in error (plaintiff below) against the plaintiff in error (as defendant) for the latter's refusal to accept the full 10,000 so-called Copley primers (for use on automobiles) contracted in the month of October, 1919, by defendant's predecessor to be purchased from plaintiff, the obligations of which contract had prior to its alleged breach been assumed by defendant. On July 21, 1920, defendant, which had already received and accepted 4,200 primers, refused to accept any more. Hence this suit.[1] Jury was waived, and the case tried by the court, which found the following facts, among others, in addition to what has already been stated herein:

"(7) That at the time said contract was repudiated and breached by the defendant the plaintiff had on hand all the material necessary for the manufacture of the remaining 5,800 primers, and had expended upon said 5,800 primers all the labor necessary for their completion, with the exception of labor which would cost $580.

"(8) That immediately upon the repudiation of said contract by the defendant the plaintiff ceased to expend any further labor upon the balance of the material for the remaining 5,800 primers.

"(9) That there was not, at the time of the repudiation of said contract, nor since said time,[2] any available market for the sale of the remaining primers in their then condition, or in their completed condition.

---

[1] There was included in the suit a claim for recovery upon two promissory notes given by defendant to plaintiff. The issues raised here do not concern those matters.

[2] The case was tried nearly 15 months after the contract was repudiated by defendant.

"(10) That the material remaining in plaintiff's hands for the 5,800 primers was of a value of $300, and no more."

Judgment was accordingly entered in plaintiff's favor for the contract price of the 5,800 primers whose acceptance was refused, less $580, labor cost of their completion, and $300 as the salvage value of the material remaining in plaintiff's hands. The only asserted errors argued here relate (1) to the rule applied by the trial court for measuring plaintiff's damages for breach of the contract; and (2) the admission of incompetent evidence.

[1] Whether the correct measure of damages was adopted involves the questions whether this court is bound by the trial court's findings of fact; and, if so, whether the facts found support the judgment. We must accept the findings of fact made below: First, because no exception was taken to the findings as not supported by the evidence (Mason v. Smith [C. C. A. 6] 191 Fed. 502, 503, 112 C. C. A. 146); and, second, apart from lack of exception, because there was substantial evidence tending to support the findings (Corey v. Atlas Co. [C. C. A. 6] 277 Fed. 138, 142).[3]

[2] No exception, however, is necessary for review of the question of law whether the judgment is supported by the facts found. C., R. I. & P. R. R. Co. v. Barrett (C. C. A. 6) 190 Fed. 118, 123, 111 C. C. A. 158; Cleveland v. Walsh (C. C. A. 6) 279 Fed. 57, 61.

[3] In our opinion the trial court applied the correct measure of damages to the facts as found. The seller was doing business in Boston, Mass.; the buyer in Cleveland, Ohio. In each state the pertinent provisions of the Uniform Sales Act have been adopted. It is the general rule, as declared by the Sales Act, and as recognized by judicial decisions, that when there is an available market for the goods the measure of damages for the buyer's refusal to accept is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market price, at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of refusal to accept. Gen. Code Ohio, § 8444 (3); Sales Act Mass. Gen. Laws, c. 106, § 53 (3); Manhattan Co. v. General Electric Co. (C. C. A. 8) 226 Fed. 173, 174, 141 C. C. A. 171.

The Sales Act, however, provides that, although the property in the goods has not passed, if they cannot readily be resold for a reasonable

---

[3] So far from plaintiff's proof of the value of the materials left on its hands being confined to a partially completed condition, plaintiff's evidence was that there was no sale for primers except to automobile manufacturers, that "all over the country" car manufacturers were "not buying things of this nature," that plaintiff had had no orders for primers since that taken from defendant, and that the material left on plaintiff's hands had no value except for primers. It was plaintiff's testimony that its sales agent in Detroit had "worked the car factories for orders," and that all the material was still on hand when the trial was had—15 months after defendant's repudiation of the contract. The reason first given by defendant for refusing to accept further shipments was that it had taken the primers off its car as "standard equipment." It is a not unnatural inference from the testimony that the marketing of Copley primers was at least in a state of suspended animation. We cannot see that the fact that the Copley primer is protected by patent cuts any appreciable figure.

price, and if the provisions of the next following section are not applicable, the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer, and that thereafter the seller may treat the goods as the buyer's and may maintain an action for the price.[4] The "following section," however, provides that if, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered, if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. This is followed by the express declaration:

"The profit the seller would have made if the contract or sale had been fully performed shall be considered in estimating such damages." Gen. Code, Ohio, § 8444 (4); Sales Act Mass. § 53 (4).

In Freiberg v. Batesville, 285 Fed. 485, 488, this court held that the provisions of sections 8443 (3) and 8444 (3) of the Ohio Code apply to all classes of property that may be the subject of sale, and that the term "available market" in section 8444 (3) must be considered in connection with the provision as to "reasonable price" found in section 8443 (3), and we accordingly affirmed a recovery by the seller of the contract price of the veneers which the buyer had refused to accept. It is true that in the Freiberg Case the seller had offered to deliver the goods to the buyer under section 8443 (3), and on the latter's refusal to receive them had given notice that the goods were thereafter held by the seller as bailee for the buyer, which was not the instant case. But in Miami v. National (C. C. A.) 268 Fed. 46, 53, 54, where the buyer repudiated the contract, we held the seller entitled to recover the full contract price of the starters delivered, and as to those not delivered the contract price less the cost of completion, and less the value of the finished starters and of the unused materials procured or made for this purpose, all as left on plaintiff's hands, and that such measure of damages as to the undelivered goods, even if title had not passed, was not erroneous on the ground that damages should properly be stated as cost incurred less salvage, plus lost profits. It is true that in the Miami Case the starters were specially manufactured, and were adapted only to use upon motorcycles manufactured by the buyer, while in the instant case the primers, although specially manufactured and required to be (in one respect) of different sizes to fit different cars, could be used on cars of other makes than defendant's. Similar considerations apply generally to the veneers in the Freiberg Case.

The distinctions to which we have referred do not take the instant case out of the principles declared in the Miami and Freiberg Cases. So far as concerns the instant case, the fact in the Miami Case that the use of the starters was so limited is significant only as showing the lack of available market, a fact which, as already stated, was estab-

[4] Gen. Code Ohio, § 8443 (3); Sales Act Mass. § 52 (3).

lished in the instant case; and although the instant case is not brought directly within section 8443 (3), as was the Freiberg Case, it is brought directly within section 8444 (4), which was not invoked in the Freiberg Case but was invoked in the Miami Case. It is as true here as it was in the Miami Case, that the provision of section 8444 (4), that "the profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages," does not change the settled rule that lost profits in case of a buyer's refusal to accept goods to be specially manufactured for it are recoverable as such, nor contemplate that lost profits shall be treated only as an element of the situation; but rather declares that this element of damage shall be estimated and shall be added to whatever other elements appear. As said in the Miami Case (page 54):

"The seller's damages, in such a case, where title has not passed, and it is defendant's theory that title has not passed, is cost incurred, less salvage, plus lost profits; and cost plus profit equals contract price. Whether this damage is given under the name of the whole or under the names of the parts is of no importance."

[4] As to the alleged admission of incompetent testimony: Plaintiff's vice president testified that the cost of completing the partially completed primers was $580, and that the junk value of the primers on hand was from $200 to $300. On cross-examination he testified that:

"In the office we obtained our information as to the cost of completing the 5,800 primers that are in the present uncompleted condition by figuring up what had been done and knowing what the total labor cost of each primer is. The testimony I have given is based on these calculations and upon information I derived from the foreman of the shop."

It appearing that plaintiff kept cost records, and that some of the information from which the witness had testified was derived therefrom, and that the cost records were not in court (the witness said it would be "pretty difficult to get them by telegram"), defendant asked that the witness be ordered to produce the records, which request was denied, whereupon defendant moved to strike out the testimony of the witness as to cost of completion as hearsay, and not the best evidence, which motion was denied.

We find no reversible error in this action. The witness was not only plaintiff's vice president, but was the general manager of its factory. The cost records in question were apparently compiled after figuring up, as stated by the witness, "what had been done, and knowing what the total labor cost on each primer is." The fact that the witness' testimony, or the calculations, or both, were derived in part upon information from the foreman of the shop, is not enough to make it wholly incompetent. Presumably the factory manager had fairly accurate knowledge of costs of articles made under his general management. Whatever information he derived from the foreman was apparently obtained at first hand and in the course of the regular performance of the duties of the witness. We think, in view of the facts that the records were in Boston, that the trial was being held at Cleveland, and that a procuring of the books would have meant a suspension or

adjournment of the trial, the court did not abuse its discretion in declining to order the production of the books as the price of permitting the evidence to stand.

The judgment of the District Court is affirmed.